The People of the State of New York, Respondent, *v.* Albert Trowbridge, Appellant.

Argued May 22, 1953; decided July 14, 1953.

*John A. Murray* and *Gerald W. O'Connor* for appellant.
I. The admission of the testimony of the witness Conley as to
Margolius' previous identification constituted reversible error.
(*Robb* v. *Hackley*, 23 Wend. 50; *The King* v. *Parker*, 3 Doug.

242; *People* v. *Jung Hing*, 212 N. Y. 393; *People* v. *Seppi*, 221 N. Y. 62; *People* v. *Ragazinsky*, 195 App. Div. 743; *People* v. *Malkin*, 218 App. Div. 635; *People* v. *Russell*, 197 App. Div. 239; *People* v. *Infantino*, 224 App. Div. 193; *People* v. *Hill*, 224 App. Div. 779; *People* v. *Spinello*, 277 App. Div. 712, 303 N. Y. 193; *People* v. *Hagedorny*, 272 App. Div. 830.) II. As a matter of law, the guilt of defendant was based upon an incredible identification and was not established beyond reasonable doubt. (*People* v. *Ledwon*, 153 N. Y. 10; *People* v. *Gluck*, 188 N. Y. 167; *People* v. *Wrieden*, 299 N. Y. 425; *People* v. *Montlake*, 184 App. Div. 578.) III. The failure of the court to inquire as to the jury's question constituted reversible error. (*People* v. *Gonzalez*, 293 N. Y. 259.)

*Timothy F. O'Brien, District Attorney* (*John T. Casey* of counsel), for respondent. I. The admission of the testimony of the witness Conley as to the previous identification by the complainant Margolius did not constitute reversible error. (*People* v. *Jung Hing*, 212 N. Y. 393; *People* v. *Seppi*, 221 N. Y. 62; *People* v. *Ragazinsky*, 195 App. Div. 743; *People* v. *Spinello*, 277 App. Div. 712, 303 N. Y. 193; *People* v. *Infantino*, 224 App. Div. 193.) II. After hearing the appeal, the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties. (*People* v. *Bellach*, 284 N. Y. S. 818; *People* v. *Vanderborg*, 277 App. Div. 795.) III. In a noncapital case, the weight of evidence is not subject to review by the Court of Appeals unless it can be said as a matter of law that there is no evidence to support it. (*People* v. *Lobel*, 298 N. Y. 243; *Gregoire* v. *Putnam's Sons*, 298 N. Y. 119.) IV. The court properly returned the jury for further deliberation. (*People* v. *Koerner*, 117 App. Div. 40, 191 N. Y. 528.)

Conway, J. Appellant was convicted of robbery in the first degree. The verdict is entirely dependent upon the complainant's testimony that there was a robbery and his identification of defendant as the perpetrator of it. The complainant also testified to his identification of the prisoner at Albany police headquarters prior to the trial.

The testimony which requires a reversal here was given by the detective, Conley. Except for minor differences, *it is the same as that already given by the complainant Margolius during his direct examination.* Conley testified that on March 16, 1951, at the Albany police headquarters, he, Margolius and a detective, Kane, entered a block, containing cells Nos. 7 to 12, so that Margolius might observe a prisoner in cell No. 10 who was booked under the name of Morley. Followed by Kane and Margolius, Conley went to cell No. 10 and was informed by the occupant that his name was Trowbridge. The prisoner in the only other cell occupied, No. 7, stated that his name was Sonleo. Conley then walked the length of the block to cell No. 12 and was about to leave the block to check the records on " Morley " when Margolius, who apparently had lagged behind, pointed to cell No. 10 and said: " That looks like the man there." The occupant then stated to Conley that his name was " Trowbridge, but you might have me under Morley." The prisoner was directed to emerge from his cell and Margolius stated: " You are the man."

At that juncture defendant's counsel objected:

" [Defendant's counsel]: * * * The prosecution is seeking to bolster an identification by proving by one witness that Mr. Margolius made an identification which is nothing more than what Mr. Margolius told us. They can't bolster an identification through proving by another witness.

" The Court: Isn't this corroboration, Counsel?

" [Defendant's counsel]: I don't think it is.

" The Court: I certainly think it is and I overrule your objection."

The witness Conley then related that defendant, at Margolius' direction, repeated the words " This is a stick-up " and Margolius said " That is the man." Conley testified that that was the *full extent of his connection with the case* and that the defendant on trial was the same person identified by Margolius at the police station.

A doctor testified for the prosecution that a detective named Kane was unable to appear at the trial due to illness. Presumably that is the detective Kane who, along with Conley, witnessed the previous identification by complainant at head-

quarters (hereinafter referred to as the previous identification).

Appellant urges that it was reversible error to receive detective Conley's testimony relating to the previous identification. The controversy as to its admissibility centers about section 393-b of the Code of Criminal Procedure: *" Testimony of previous identification.* When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification."

Prior to the enactment of that section, it was a well-settled rule that an identification by a witness, given on a trial, could not be " bolstered " by testimony that the witness had previously made a similar identification. Such " hearsay " testimony was regarded as a " self-serving performance of no probative value, and yet strongly calculated to influence a jury of laymen not versed in the rules of evidence." (*People* v. *Jung Hing,* 212 N. Y. 393, 401; and *People* v. *Seppi,* 221 N. Y. 62.) The error of permitting evidence of previous consistent statements was stated thus in *People* v. *Katz* (209 N. Y. 311, 342): " * * * it is obviously a mistake to suppose that an untrustworthy story can be made trustworthy by proving numerous repetitions of it; and equally illogical does it appear to be to attempt to support a credible witness and reliable testimony by any such broken reed." The prohibition was, however, the subject of exceptions well explained in *People* v. *Jung Hing* (pp. 401–404, *supra*) and *People* v. *Katz* (pp. 336–343, *supra*). A fair generalization covering those exceptions is that proof of a previously made identification was permissible where a witness, who at the trial identified the defendant, was discredited or impeached and the previous identification had been made at a time when the witness was not subject to the discrediting or impeaching influences. " The usual contradictions inherent in the differing versions of the opposing witnesses " did not justify the invocation of the exceptions to the rule (*People* v. *Jung Hing,* p. 403, *supra*). The previous consistent statement was proper for the purpose of rebutting the suggestion that the identification of the witness at the trial was a " recent contrivance." Thus, the testimony when permissible was proof of credibility and not at all substantive or affirmative proof of identity. The *Jung Hing* rule naturally precluded testimony of a previously made identification whether it was

tendered by the person who had made the identification or by one who was a witness to it. (See *People* v. *Ragazinsky*, 195 App. Div. 743.)

On direct, complainant Margolius testified to his previous identification of defendant as the perpetrator of the robbery. He was able, on the trial, positively to identify defendant as the person who committed the crime and as the person previously identified. Neither on cross-examination of Margolius nor at any other time during the trial was there anything elicited or insinuated which, under the *Jung Hing* rule, would have permitted testimony by any witness as to the previous identification. There is a tacit admission to that effect by the District Attorney since he makes no attempt to bring the testimony of the witness Conley within any exception to the *Jung Hing* rule and concedes that the principle stated in that case " resulted, of course, in the exclusion of testimony of a prior identification by either the witness making it or others in whose presence it was made." Whatever " impeachment " there was of Margolius' identification of defendant on the trial arose from circumstances which affected the previous identification equally as much as that given upon the trial, e.g., Margolius' lack of opportunity, at the time of the crime, for adequate observation of the robber, his inability to give a detailed description to the police and the fact that no person, other than Margolius, who freed himself without assistance, witnessed the crime. The fact alone that the previous identification was made when Margolius' recollection presumably was better is not of course sufficient reason in itself for allowing evidence of the previous identification. If the contrary were so, there would have been no *Jung Hing* rule.

The question then is whether section 393-b of the Code of Criminal Procedure, quoted (*supra*) at page 475, permits the use of detective Conley's testimony.

It is of course well established that a statute in derogation of the common law must be strictly construed. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], §§ 301, 305.) The statute in question is clear and unambiguous at least insofar as the issue under consideration is concerned. It provides only that that person who made a previous identification may testify thereto. There is nothing in its language to indicate that any

person, other than the identifier, is relieved from the prohibitions otherwise existing.

Numerous repetitions by various witnesses of the fact that on a particular occasion an identification was made by a complainant or other person are just as capable of exaggerating, in the minds of lay persons, the probative value of properly received substantive proof of identity, are just as capable of endowing such proof with an undeserved aura of trustworthiness, and are just as apt to have attributed to them some probative effect despite their hearsay character, as is testimony by a witness that on numerous prior occasions he has made an identification similar to that made by him on the witness stand. That the Legislature has seen fit to permit the latter is no valid reason for our saying, in the absence of legislative mandate, that the former must also be allowed. We should read the exception to the common-law rule as the Legislature wrote it and not seek to rewrite it.

Nothing need be said here to emphasize the nature of a conviction based only upon identification testimony such as present here — especially where identity is based upon brief observation by a single witness and where there is no proof of the robbery except the testimony of the same single witness. We would be reluctant to say in such a case that any error which is apt improperly to enhance the weight of such testimony is a technical one which may be disregarded. Thus, the complainant was the only one who testified to the robbery and the fact he had been tied up. No one found him tied up because, according to his testimony, he freed himself. He was tied up with his own belt and tie. The whole case against defendant is in the tongue of complainant. The complainant said that, after asking for some cigarettes as would an average customer, the robber, as complainant reached the place where he was standing, put a handkerchief to his face with his left hand and with his right hand put a " gun into " complainant, told him it was a stick-up and directed him to walk to the rear of the drugstore of which he was manager. There was testimony that defendant was left-handed and bald — and so sensitive about his baldness that he would not take his hat off while indoors. His employer said he had often asked defendant to remove his hat when indoors and

he refused. Yet the robber came into the drugstore without a hat and the complainant never described him to the police as bald or as having a receding hairline. Complainant admitted that the defendant on trial had a receding hairline. In answer to a question at the preliminary hearing complainant testified: " As to his weight, I couldn't give you a specific figure: as to his height, I couldn't give you a specific figure: as for his age, I couldn't give a specific figure; and I believe I was under a little bit of internal strain and stress and those things didn't seem too important to me at the time."

The complainant estimated that he was robbed of $230 which he had in two wallets. He testified he might have said, at the preliminary hearing, that $327 was stolen. He said he did not know how much had been stolen from the cash registers as his employer had been the one who checked them. The robber wore no gloves. The registers, which complainant heard the robber open, were checked for fingerprints by a Sergeant Foley. None was found.

The defendant called five witnesses who testified to an alibi.

This was not an open and shut case. Conley's testimony may well have been a major influence in bringing about the conviction.

The judgments should be reversed and a new trial ordered.

FULD, J. (dissenting). I am inclined to agree that the testimony of the police officer, Conley, as to Margolius' out-of-court identification of defendant as the robber was inadmissible, but that does not mean that the judgment of conviction should be reversed.

In the light of the victim's positive and unequivocal trial identification of defendant, particularly in view of the circumstances under which he had made his initial identification, the challenged testimony of the police officer added little, if anything, to the case against defendant. The result would, I am willing to acknowledge, be different, if, as in the case supposed in the court's opinion (p. 477), the trial judge had permitted a number of other witnesses to testify that a complainant had " on a particular occasion " previously identified the accused. In the case before us, however, reception of Conley's testimony could not, in my judgment, have possibly influenced the jury or affected its verdict.

I would affirm the conviction under section 542 of the Code of Criminal Procedure.

LEWIS, Ch. J., DESMOND, FROESSEL and VAN VOORHIS, JJ., concur with CONWAY, J.; FULD, J., dissents in opinion in which DYE, J., concurs.

Judgments reversed, etc.