Scileppi, J. (dissenting).
I dissent and vote to affirm. In my opinion, the inculpatory statements made by the defendant were not obtained in violation of his right to counsel and, therefore, they were properly admitted against him. As I view this case each and every statement made by the defendant was made prior to the time that his right to counsel had attached and, therefore, the question of waiver need not be reached.
In People v. Bodie (16 N Y 2d 275) we extended the rule of People v. Di Biasi (7 N Y 2d 544), People v. Waterman (9 N Y 2d 561) and People v. Meyer (11 N Y 2d 162) and held that the right to counsel attached after an information had been filed. In People v. De Renzzio (19 N Y 2d 45) we specifically refused to apply Bi Biasi, Waterman and Meyer retroactively. Since Bodie was an extension of the above-named cases, I see no reason why it should be given retroactive effect. In the absence of retroactive application of Bodie, the admissibility of the postinformation statement in the case at bar is governed by the rule of Crooker v. California (357 U. S. 433).*
In Crooker (supra) the defendant asked for and was denied the opportunity to consult with a lawyer. In the Supreme Court of the United States, defendant argued that his confession should be excluded since the “ denial of a request to contact counsel [is] an infringement of the constitutional right [to counsel] without regard to the circumstances of the case ” (Crooker v. California, supra, p. 440). The Supreme Court *569 refused to fashion such a broad rule. It held that the State’s refusal of a request to engage counsel at the pretrial proceedings violates due process only if the defendant is so prejudiced thereby “as to infect his subsequent trial with an absence of 1 that fundamental fairness essential to the very concept of justice ’ ” (id., p. 439). Whether or not the defendant is prejudiced depends upon all the circumstances of the case (id., p. 440). The Supreme Court concluded that the defendant was not prejudiced since he had had some law school training and was obviously cognizant of the ways of the law.
In the case at bar, the defendant was not so prejudiced by the denial of access to counsel (if access was in fact denied) as to require the exclusion of the postinformation statements made to the Westchester County Parkway Police. The defendant was obviously experienced in the ways of the law and was cognizant of his constitutional rights. He had been previously convicted of impersonating an airman. He had also been previously interrogated by the Westchester County Parkway Police shortly after the occurrence of the armed robbery. Moreover, the defendant had attempted to file a writ of habeas corpus in the Federal District Court alleging that his constitutional rights had been violated and he had sent a letter to the Governor of Wyoming making the same allegations.
With respect to the inculpatory statement made by the defendant to the Cheyenne authorities, the defendant contends that they are inadmissible under People v. Robinson (13 N Y 2d 296) and People v. Davis (13 N Y 2d 690). Those cases refined the rule laid down in People v. Meyer (supra) that the right to counsel attaches at arraignment. In Robinson and Davis the defendants had been booked and arraigned on the charge of vagrancy for the sole purpose of allowing the police to continue questioning them about other crimes. Subsequent to these arraignments, the defendants made inculpatory statements with respect to other crimes. We held that the police could not circumvent the rule of People v. Meyer (supra) by a sham arraignment and consequently all statements taken subsequent to the arraignment were inadmissible.
In the case at bar only one of the three statements made to the Cheyenne authorities was obtained subsequent to the arraignment on the vagrancy charge. Thus, if Robinson and *570 Davis are applicable, they would only be applicable to the last of the three statements. The first two statements are clearly admissible under the rule laid down in Crooker v. California (supra).
In my opinion Robinson and Davis are not controlling. In those cases the defendants were booked and arraigned on sham charges by New York authorities for the purpose of questioning them on other crimes for which they could be prosecuted in New York. In the case sub judice, although it is manifest that the vagrancy charge was merely a pretext used by the Cheyenne authorities to assure the detention of the defendant while they continued interrogating him in order to determine if he was wanted in New York, and if he was extradictable, they were not holding Malloy for the purpose of obtaining inculpatory statements from him with respect to a crime for which he could be prosecuted. In other words, as far as the Cheyenne authorities were concerned, the defendant was not the target of an investigation of an armed robbery charge and no judicial proceeding had yet commenced with respect to the New York prosecution. Consequently, with respect to this prosecution the defendant’s right to counsel had not yet attached, and, therefore, his statement was admissible (cf. People v. Stanley, 15 N Y 2d 30).
After the defendant had been returned to New York, a lineup was arranged by the police at 'which the defendant was placed on a lighted stage among four other prisoners. Each wore a Parkway Police uniform cap with the cap device removed to simulate an Air Force uniform cap. Each man was substantially comparable to the defendant in physical characteristics. Of this group, Stanley Bruce, the victim, selected the defendant as being familiar to him and resembling the man who held him up. He also predicated his identification on the way the defendant spoke. At the trial, Bruce testified that the defendant resembled the man who held him up, but he admitted upon cross-examination that he was not sure of his visual identification. The People produced a police officer who had witnessed the victim’s prior identification of the defendant. He testified that the victim had viewed a line-up and had picked the defendant out of the line-up and stated that, he resembled the man who held him up.
*571 The admission of the evidence of this bolstering testimony was clearly erroneous (People v. Trowbridge, 305 N. Y. 471; People v. Herrmann, 9 N Y 2d 665). However, in light of the numerous confessions of the defendant’s guilt, the error was not prejudicial (People v. Alexander, 13 A D 2d 520; Code Crim. Pro., § 542).
To conclude, it is my opinion that the inculpatory statements made by the defendant were not obtained in violation of his right to counsel and that the erroneous admission of bolstering identification evidence was nonprejudicial.
Accordingly, the judgment and order appealed from should be affirmed.
Chief Judge Fuld and Judges Burke and Keating concur with Judge Breitel; Judge Scileppi dissents and votes to affirm in a separate opinion in which Judges Bergan and Jasen concur.
Judgment reversed and a new trial ordered. Order reversed and matter remitted to the County Court for further proceedings in accordance with the opinion herein.

 Crooker v. California (supra) was overruled by Escobedo v. Illinois (378 U. S. 478). The Supreme Court, however, held in Johnson v. New Jersey (384 U. S. 719) that Escobedo need not be applied retroactively. We decided in People v. McQueen (18 N Y 2d 337) that Escobedo would not be applied retroactively in New York. Thus to the extent that the rule in Grooher is applied to trials commencing prior to June 22, 1964, it is still good law in the absence of any New York rule to the contrary. At the time the defendant was tried, the rule in New York was that the right to counsel attached at arraignment (People v. Meyer, supra).