■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS MULLIN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered June 13, 1973, convicting him of robbery in the first degree, assault in the second degree and criminal impersonation, upon a jury verdict, and imposing sentence. Judgment affirmed. On July 29, 1972 the complainant answered the doorbell ring at his home in Queens and admitted two men, one of whom (the appellant herein) flashed a badge and identified himself as a detective from the homicide squad. Once inside, appellant drew a gun and said "I am no cop. I am taking you off." Appellant then began torturing the complainant in an effort to compel him to divulge the combination to the safe in his home. For one hour, appellant slapped the complainant, hit him with a baseball bat and squeezed his testicles, while appellant's accomplice stood by. The complainant persevered through all of this, as well as through threats to members of his family (who were not at home); the two intruders finally left at the urging of appellant's accomplice. Appellant was captured some months later, after the complainant identified him from a photograph; the investigation continued and the accomplice was captured a short while thereafter. Both were convicted by a jury at a joint trial where the complainant, who had ample opportunity to view the perpetrators under good lighting conditions and for a long period of time, identified them. The evidence of identification was positive and convincing, as was the corroborative proof adduced placing appellant at the scene of the crime right after its commission. The codefendant's conviction was unanimously affirmed by this court, with our dissenting brother on that bench *(People v O'Connor,* 45 AD2d 990). Now, on this appeal, he concludes that reversible error was committed at the trial as to appellant. We disagree, and will treat seriatim his claims of error. First, we consider the claim that prejudicial error was committed when it was brought to the jury's attention that appellant had a criminal record, notwithstanding that he did not testify at the trial. The prosecution witness referred to in the dissent, Detective Peano, testified on direct examination that, as a result of

a photograph identification by the complainant (without saying who was identified), an investigation was made and appellant was arrested. On cross-examination, *defense counsel elicited* some of the details of that identification, including *the fact that it was appellant's photograph which was picked out by the complainant.* On redirect, the report prepared by this witness in connection with his investigation (which included the complainant's identification of appellant from a photograph) was admitted into evidence *without objection* (People's Exhibit 7). No portion of that report was sought to be excised, deleted or covered by defense counsel. Thereafter the prosecutor sought to clarify some of the matter in the report. It was at this point that the examination set forth in the dissenting memorandum transpired. If the position taken by the dissenter as to the magnitude of the error in allowing the excerpted redirect examination was correct, one would expect a "hue and cry" of prejudicial error and, possibly, a motion for a mistrial. But, in point of fact, none was made and all defense counsel said *immediately* following the excerpted examination was, "Your Honor, this has all been asked and answered", following which the court instructed the jury as noted in the dissent. Under these circumstances, we conclude that no reversible error occurred. However, assuming that error was committed as claimed, it was not properly preserved for appellate review since appellant did not object to any portion of Exhibit 7 when it was offered into evidence. At that time any possible harm could have been obviated (see CPL 470.05, subd 2; cf. *People v Bauer,* 32 AD2d 463, affd 26 NY2d 915). Second, as to the claim that the *Trowbridge* rule *(People v Trowbridge,* 305 NY 471) was violated by the admission of "improper bolstering of identification evidence during the questioning of Detective Peano", the short answer is that it was the defense which first adduced the fact that appellant was identified before the trial by the complainant from a photograph, and there was no objection when such fact was subsequently elicited by the People. Furthermore, assuming that error was committed, it should not be characterized as reversible since there was ample opportunity in this case for the complainant to view appellant during the commission of the crime (see *People v Baskerville,* 32 AD2d 555; *People v Woods,* 30 AD2d 1040) and the proof of guilt was overwhelming (see *People v Nival,* 41 AD2d 777, affd 33 NY2d 391; cf. *People v Hill,* 38 AD2d 919). As to the third claim, that the prosecutor's summation was "downright unfair and improper", we note that this was the same summation which was ruled free from prejudicial error in this court's affirmance of the conviction of the codefendant. Moreover, to the extent that some of the prosecutor's remarks can be characterized as "intemperate", they can properly be considered "reactions at certain times of stress" *(People v Ketchum,* 35 NY2d 740, 741), and responsive to remarks made by defense counsel during his summation (see *People v Castillo,* 16 AD2d 235). Accordingly, there is no basis for reversal, especially in light of the overwhelming evidence of guilt (see *People v Ketchum, supra; People v Crimmins,* 36 NY2d 230; see, also, *People v Brosnan,* 31 AD2d 975, affd 32 NY2d 254). Lastly, we address ourselves to the claim that appellant did not receive a fair trial and that the interests of justice therefore require a reversal. Upon our review of the record on this appeal we find a rather spirited trial, but one in which appellant was well represented by retained counsel. There is no claim of inadequate assistance of counsel and we do not find that the basic rules of a fair trial were violated. Absent such a finding and where, as here, the evidence of guilt is overwhelming, we are not impelled to overlook the failure to preserve error for appeal. Rabin, Acting P. J., Hopkins, Martuscello and Christ, JJ., concur; Shapiro, J., dissents and votes to

reverse the judgment and order a new trial, with the following memorandum: Although this court previously affirmed the conviction of the codefendant *(People v O'Connor,* 45 AD2d 990), I am compelled to dissent in this case because, as to this defendant, the trial was unfair. Despite repeated objections by defense counsel, the prosecutor time and again placed before the jury the fact that appellant had a prior criminal history. On redirect examination of a police witness, the following took place: "Q. Now you testified in the last exhibit, People's 7 in evidence, as to a B number. A. That's correct. Q. What does that 'B' mean? MR. LUSTHAUS [Defense Counsel]: Objection, your Honor. THE COURT: Sustained Q. Did that number exist prior to that report? MR. LUSTHAUS: Objection. THE COURT: Sustained. Q. What is a 'B' number? MR. LUSTHAUS: Objection. THE COURT: Sustained. Q. Where did you get that information from that is in that report? MR. LUSTHAUS: Objection. THE COURT: Overruled. A. From the Bureau of Criminal Identification. MR. KATSORHIS [Assistant District Attorney] May I have that, People's 7? (Handed to counsel.) Q. Now, it has on People's 7 in evidence, item number 3: [Reads passage from DD-5 * * *] Where did this number B-200683 come from? MR. LUSTHAUS: Objection. THE COURT: Overruled. A. From the criminal file. Those who have records. Q. Was Mr. O'Connor's picture in that file? A. No. * * * Q. Was Mr. Mullin's picture in that file? A. Yes". Despite the tepid statement of the trial court after the foregoing took place, that "the jury is instructed not to draw any inference or make any suggestion from these last few questions put to the witness by Mr. Katsorhis", the damage was done. The trial court's admonition could not strike from the minds of the jurors the fact that this appellant was a man with a prior criminal record. Even a first-year law student must know that testimony with regard to a defendant's prior criminal record, when he does not take the stand or put his character in issue, is inadmissible and may make "the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known convict" *(United States v Reed,* 376 F2d 226, 228). Not content with eliciting this improper and prejudicial testimony, and heedless of the admonition of the court, the Assistant District Attorney, at the very beginning of his summation, noted that defense counsel had referred to the course of employment of the codefendant O'Connor, saying: "He had to bring that out. Who brought it up? But did he bring in the course of employment or the *past history* of his co-defendant Francis Mullin?" (Emphasis supplied.) When defense counsel objected, the jury was instructed to dismiss the statement "from [its] mind", but it was really being asked to do the impossible. Again, in defiance of the court's rulings, and in violation of the basic principles of law involved, the prosecutor stated, "Were there any photographs of Thomas O'Connor? No, he was a Correction Officer", thus clearly indicating that there were criminal record photographs of the appellant. In *People v McCain* (42 AD2d 866, 867), this court pointed out what it should never be necessary to point out to a prosecutor, that it was "error to allow an inference to the jury that the defendant might be a convicted criminal." In the brief of the District Attorney we find the admission that "there can be no reasonable excuse tendered for this regrettable transgression", but the District Attorney contends that because of the overwhelming proof of appellant's guilt, the errors complained of, both singularly and collectively, do not raise a significant probability that the jury would have acquitted were it not for the receipt of the contested evidence, citing *People v Crimmins* (36 NY2d 230). The District Attorney overlooks the fact, however, that the *Crimmins (supra)* case specifically stands for the proposition that, if a trial is unfair,

the fact that the proof of guilt may be overwhelming is immaterial. While no one is entitled to an errorless trial, everyone is entitled to a fair trial. In addition to the foregoing fundamental deprivation of the right to a fair trial, there was a completely improper bolstering of identification evidence during the questioning of Detective Peano. While there was no objection taken to this testimony, this court, unlike the Court of Appeals, has the power, in the interest of justice, to consider the errors. Taken together with the completely unfair procedure indulged in by the Assistant District Attorney at the trial, the improper bolstering in violation of the *Trowbridge* rule *(People v Trowbridge,* 305 NY 471) should not be overlooked. The People concede in their brief "that some of the prosecutor's remarks, quoted by the appellant in his brief, were intemperate." They were more than that. They were downright unfair and improper. As judges, we are bound to uphold the law, not only to see that no innocent person is improperly convicted, but also to see that no guilty person is convicted in violation of the law. That is exactly what happened here. As the Court of Appeals said in *People v Crimmins* (36 NY2d 230, 238, *supra),* "the right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right." The judgment of conviction should be reversed and a new trial ordered.