Alexander, J.
(dissenting). I cannot agree that the improperly admitted hearsay testimony of three police officers who repeated the description given to them by the complainant can be considered harmless error in this one-witness identification case. Accordingly, I respectfully dissent and vote to reverse and remit for a new trial.
The trial evidence established that sometime after she left her home at 2:00 p.m. on August 14, 1986, the complainant walked down a ramp from a crosswalk over the Major Degan Expressway and was grabbed from behind by a man. The man forced her down an embankment into some bushes near the ramp and raped her there. The entire attack lasted approximately 20-25 minutes, after which the complainant climbed back up the embankment where she saw the man leave with a blue-green knapsack and a tattered manila envelope.
The People’s case against defendant consisted of the testimony of four police officers as well as that of the complainant. It was only the complainant, however, who allegedly saw defendant at the scene of the crime and thus it was only the complainant who could identify him. Yet before she testified, the People improperly introduced hearsay testimony through three police officers that on the date in question, the complainant reported that she had been raped and described her attacker to them. The officers were further permitted to testify, over repeated defense objections, to the details of the descriptions. Thus, Officer Frank Bettis testified that while he was on patrol with his partner, Officer Iris Ballester, they responded to a radio run and observed the complainant in the back seat of a patrol car. Bettis testified that the complainant told him that she had been raped and that the complainant told both Bettis and Ballester that the perpetrator was a black male in his early twenties, taller than she was, approximately 150 pounds, with a light beard, wearing a blue shirt and black pants and with a bluish green knapsack and a manila envelope. Bettis was also permitted to testify to the complainant’s description of the scene of the crime.
The prosecution’s next witness was Officer Ballester, who was permitted, again over defense objection, to repeat the same description that the complainant had given both Bettis and Ballester.
The third witness permitted to testify to the complainant’s *934 description of her attacker was Police Officer Bruce Jackson. Jackson testified that at 4:20 p.m. on the date of the incident the complainant ran up to his car crying for help and saying that she had been raped. As with Officers Bettis and Ballester, Jackson was also permitted to testify, over defense objection, to the description given to him by complainant. According to Jackson, the complainant described her attacker as wearing black pants and a short-sleeved blue shirt and that he had a beard and carried a blue-green knapsack.
It was only after the admission of all this testimony that the complainant was called to testify. She testified that although the attack occurred in mid-afternoon on a bright day and lasted for a 20-to-25-minute period, her assailant repeatedly ordered her not to look at him and that she could not take her eyes off the man’s eyes throughout the attack. She then described her attacker as a black man, approximately 20 or 22 years old, who had short hair, a moustache, and a "beard-like” and was well-groomed. The complainant further testified that he wore a blue T-shirt, black khaki pants and burgundy, brief-style underwear. Additionally, the complainant testified that she had previously identified the defendant in a lineup and also made an in-court identification. On cross-examination, defense counsel established that the complainant was extremely upset as a result of the incident, that she became hysterical when reporting the rape and describing her attacker and when she viewed the lineup more than two weeks later. Defense counsel also sought to establish the unreliability of her identification by demonstrating inconsistencies in her statements as to the assailant’s height and his beard.
As this review of the trial evidence makes clear, the People’s case hinged upon the complainant’s ability to identify the defendant as her attacker. Indeed, defendant was not arrested at the scene or even on the day of the crime. It was only the complainant’s testimony that could link him to the crime. The complainant’s trial testimony as to her attacker’s description was not particularly detailed, but, whatever its weaknesses, by the time the jury heard the complainant’s testimony, its reliability had been established by the prior repetition of her description by three police officers. As we recognized in People v Trowbridge (305 NY 471, 477), "[nothing need be said here to emphasize the nature of a conviction based only upon identification testimony such as present here —especially where identity is based upon brief observation by *935 a single witness and where there is no proof of the [crime] except the testimony of the same single witness. We would be reluctant to say in such a case that any error which is apt improperly to enhance the weight of such testimony is a technical one which may be disregarded.” Here, it is inconceivable that description evidence, which the majority concedes was erroneously admitted, did not bolster the complainant’s own identification testimony and therefore contribute to the verdict.
Accordingly, I dissent and vote to reverse. The defendant is entitled to a new trial.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur; Judge Alexander dissents and votes to reverse in an opinion.
Order affirmed in a memorandum.