■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL CALABRIA, Appellant. [689 NYS2d 159] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Lebowitz, J.), rendered June 26, 1997, convicting him of robbery in the first degree and burglary in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The complainant, the wife of the pastor at the International Baptist Church in Brooklyn, was a teacher at the International Christian School, located within the church. In the late afternoon, on April 8, 1996, she entered the school with the intention of preparing for her next day's classes. She found her

classroom in complete disarray, with the closet door shattered. As she exited the room to check an adjacent classroom, she encountered the defendant, who was standing in the hallway approximately three feet away, directly facing her and pointing a gun at her. She testified that light from windows illuminated the area and she had no difficulty seeing the defendant's face, which she observed for 5 to 10 seconds before she screamed and began to back into her classroom. Although she immediately complied with the defendant's command that she close her eyes, she concentrated on picturing the defendant's face in her mind while he continued to search the classrooms and school office for money. Several months later the complainant viewed a lineup during which she immediately identified the defendant as the perpetrator. At trial, she testified that she had no doubt that it was the defendant who had confronted her in the church.

Viewing the evidence adduced at the trial in the light most favorable to the People (*see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. The complainant had the opportunity to observe the defendant at very close range, in good lighting, as he stood still. She testified that "he was looking right at me and I was looking right at him", and she stated several times that she could see the defendant's face clearly above the gun pointed at her. Despite extensive cross-examination, the complainant remained unshaken in her conviction that the defendant was the person who accosted her in the church.

Contrary to the defendant's contention, the complainant's admission, on cross-examination, that she had previously stated that she got a brief glimpse of the defendant does not diminish the explicit and consistent testimony at trial as to the circumstances of her encounter with him or her identification of him. The accuracy of an eyewitness's identification and the resolution of issues of credibility are primarily questions for the jury to assess and should not be disturbed unless clearly unsupported by the record (*see, People v Joyiens,* 39 NY2d 197, 203; *People v Gaimari,* 176 NY 84, 94; *People v Bryan,* 179 AD2d 667; *People v Parris,* 167 AD2d 432). Moreover, the complainant's identification testimony was not undermined by a defense witness's purportedly conflicting description of the assailant, since that witness also testified she had seen the person she described walking away from the church at least one half hour before the complainant encountered the defendant in the church.

Any possible error in permitting the prosecution to elicit testimony from witnesses which inferentially bolstered the complainant's identification testimony must be considered harmless in view of the complainant's strong and positive identification testimony (*see, People v Trowbridge,* 305 NY 471; *People v Johnson,* 57 NY2d 969; *People v White,* 210 AD2d 271).

The defendant's extensive testimony regarding his purported inability to commit the crime with which he was charged because it was morally reprehensible to rob a church left him susceptible to the cross-examination about his other, prior criminal activities. During the cross-examination, the prosecutor briefly showed him a copy of the *New York Post* containing a headline which referred to alleged drug-related activities of the defendant's family. The newspaper was never admitted in evidence and there is no indication in the record that the jury saw the headline or that it took the prosecutor's brief reference to the newspaper into account in reaching its verdict. Furthermore, it may be presumed that the jury followed the court's immediate instruction to disregard the prosecutor's reference to the newspaper.

Finally, the prosecutor's comments during summation, when considered in light of the entire trial and the court's admonishments to the jury, did not deprive the defendant of a fair trial (*see, People v Galloway,* 54 NY2d 396, 399; *People v Ashwal,* 39 NY2d 105, 109).

The defendant's remaining contentions are without merit. Thompson, J. P., Sullivan and Luciano, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment appealed from, and to order a new trial, with the following memorandum in which Krausman, J., concurs: In our view, the prosecutor's conduct exceeded the bounds of propriety to such an extent as to deprive the defendant of a fair trial (*see, People v Figueroa,* 181 AD2d 690).

The sole evidence of the defendant's identity as the perpetrator was the identification testimony of the complaining witness, who acknowledged on cross-examination that she initially informed the police that she "got a quick glance" of the perpetrator, and told the Grand Jury that she got "a glimpse" of the perpetrator.

Although the site of the crime had been ransacked, no fingerprints of the defendant were found. Another witness observed a man of medium build with very dark skin and hair leaving the scene. The defendant is a white male with light skin, five feet seven inches tall, who weighed 217 pounds.

In his opening statement, the prosecutor noted, over objection, that police officers interviewed the complainant and "The very next day * * * they were looking for Michael Calabria". Thereafter, over objection, the prosecutor elicited testimony from two police witnesses that they started searching for the defendant the day after they interviewed the complainant. Such implicit bolstering was clearly improper (*see, People v Holt,* 67 NY2d 819, 821).

Although some inquiry into the defendant's prior drug selling was proper to impeach his claim that he was a moral man who only engaged in victimless crimes, the prosecutor exceeded the bounds of fair advocacy when he noted that the alleged drug dealing of the defendant's parents "made the cover of the Post". He then pulled out a copy of the *New York Post,* which was never admitted in evidence or even marked for identification, with a headline relating to the drug activity of the defendant's parents. The trial court found the prosecutor's conduct "absolutely contemptuous", but denied the defense counsel's motion for a mistrial.

During the course of the trial, the trial court ruled that the defendant was not required to turn over to the prosecutor a photograph of the lineup. Nevertheless, the prosecutor asked the defense counsel for the photograph in the presence of the jury. The defense counsel moved for a mistrial, which was denied with an admonition to the prosecutor that "if this ever happens again, and I do declare a mistrial, it is going to be a very expensive one to you". Thereafter, the defense counsel introduced the photograph in evidence to avoid the appearance of "hiding something". The prosecutor, over objection, nevertheless commented on summation "[R]emember what happened when I tried to get in the photo?" When the objection was sustained, the prosecutor persisted in describing how he "tried to get that photo", again over objection. Since the prosecutor repeatedly violated the court's rulings, a mistrial should have been granted (*see, People v Gomez,* 227 AD2d 210; *People v Russell,* 199 AD2d 345).

"Although a one-witness identification is sufficient to support a judgment of conviction (*see, People v Joyiens,* 39 NY2d 197), in this close case, [the] errors committed by the trial court may have tipped the balance against the defendant and operated to deprive him of a fair trial" (*People v Morris,* 100 AD2d 600).

In light of the multiplicity of errors, and the prosecutor's repeated refusal to comply with the trial court's directives, a new trial is mandated.