[958 NE2d 905, 934 NYS2d 776]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL THOMAS, Appellant.

Argued October 20, 2011; decided November 21, 2011

**APPEARANCES OF COUNSEL**

*Simpson Thacher & Bartlett LLP*, New York City (*Ian R. Dattner* of counsel), and *Office of the Appellate Defender* (*Joseph M. Nursey* and *Richard M. Greenberg* of counsel) for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Jared S. Wolkowitz* and *Richard Nahas* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

At about 3:40 A.M. on June 10, 2006, Oscar Magallanes was accosted by two men, on the landing outside the front door of 124 East 103rd Street, in Manhattan. As he put his key into the lock, the men forced him to the ground. One attacker held Magallanes down, while the other went through the pockets of his jeans, taking his cell phone, as well as a $20 bill and a $1 bill from his wallet. The landing was well-lit, and Magallanes had no difficulty seeing the faces of the two men, with whom he remonstrated before they took off, westbound, along 103rd Street towards Park Avenue.

At about the same time, Police Officer Francisco Leon and his partner were driving north on Park Avenue when they noticed two men—Daniel Thomas and Victor Cruz—running, shoulder-to-shoulder, westbound on 103rd Street, turning their heads

backwards as they ran. When the men saw the officers, they slowed to a walking pace, and the officers confronted them. Officer Leon asked Thomas for identification, which Thomas produced, but also displaying a credit card bearing a name different from his own. Thomas was unable to explain the origins of the credit card, and he and Cruz were arrested.

At the precinct, a search of Cruz yielded a cell phone, a $20 bill and a $1 bill. Meanwhile, Magallanes had reported the robbery to the police. As Police Officer Christopher Diakonikolas was preparing to leave the precinct to investigate, he saw Thomas and Cruz, and noticed the cell phone, which had a sticker on it. At the scene of the robbery, Diakonikolas interviewed Magallanes, who gave him a description of the cell phone, consistent with what Diakonikolas had seen at the precinct.

Thomas and Cruz were brought to the crime scene for a "showup," at which Magallanes identified them as the men who had robbed him. Magallanes also identified his cell phone, which had been found in Cruz's possession.

Cruz pleaded guilty to one count of robbery in the second degree. Thomas elected to go to trial. Following a suppression hearing, Supreme Court ruled that the police lacked probable cause to arrest Thomas after he was unable to explain the credit card, and suppressed Magallanes's showup identification of Thomas as the fruit of an illegal arrest. Magallanes would, however, be allowed to testify about his showup identification of Cruz. An independent source hearing was also held, and Supreme Court ruled that Magallanes would be permitted to identify Thomas in court.

At trial, Magallanes testified that he had identified Cruz at a showup. He made an in-court identification of Cruz, through a photograph, as the man who had rifled through his pockets and taken his cell phone and cash. The jury heard that Magallanes's cell phone had been found on Cruz. Magallanes also made an in-court identification of Thomas as the person who had held him down during the robbery. Thomas presented no evidence.

At the close of testimony, Thomas objected to the testimony concerning the showup, citing *People v Monroe* (40 NY2d 1096 [1977]) for the proposition that identification of a codefendant who is not on trial is necessarily irrelevant and inadmissible. He requested that the testimony be stricken or a mistrial granted. Supreme Court denied Thomas's motion.

During the People's summation, the prosecutor mentioned Magallanes's showup identification of Cruz as the man who had

taken his cell phone, as evidence that his courtroom recognition of Thomas was accurate. Thomas raised no specific objection to this part of the summation.

The jury found Thomas guilty of robbery in the second degree. Appealing the judgment of conviction, Thomas argued, among other things, that the evidence of the showup identification of Cruz was inadmissible. The Appellate Division ruled that any error was harmless, and affirmed Supreme Court's judgment (68 AD3d 685 [2009]). One Justice dissented, and granted Thomas leave to appeal to this Court. We now affirm, although our reasoning differs somewhat from that of the Appellate Division.

■ Thomas's reliance on *People v Monroe* is misplaced. In *Monroe*, we held that trial "testimony by one of the witnesses that he had identified one of the robbers not on trial, *bolstered by one of the police officers on the same issue*," was wrongly admitted (40 NY2d at 1098 [emphasis added]). *Monroe* does not stand for the proposition that the admission of evidence of a witness's identification of a codefendant not on trial is improper. To the extent that some Appellate Division decisions suggest otherwise, they are in error.

Nor is the case before us governed by the well-established restrictions in New York on *third-party* testimony concerning an eyewitness's pretrial identification of a defendant, known as the *Trowbridge* rule (*People v Trowbridge*, 305 NY 471 [1953]; *see also People v Buie*, 86 NY2d 501, 509-510 [1995]). Here, it was Magallanes himself who testified, not a third party.

■ Moreover, the concerns that underlie *Trowbridge* do not apply in the situation presented here. The repetition of an identification by a third party may

> "improperly influence the jury's belief in the reliability of the identification. . . . The testimony of the third party is not probative of whether the defendant was the person who committed the crime, but it could at best establish that the eyewitness, prior to trial, identified the defendant in the presence of others" (*People v Bolden*, 58 NY2d 741, 743 [1982, Gabrielli, J., concurring]).

By contrast, Magallanes's testimony concerning his identification of Cruz was probative of whether Thomas had attacked Magallanes. This is because Magallanes's accuracy in identifying the person who, it turned out, had his cell phone was

relevant to whether the conditions on the landing at 124 East 103rd Street were conducive to observing the other attacker and accurately identifying him at trial. Thus, Supreme Court did not abuse its discretion in refusing to strike this material testimony or grant a mistrial.

CIPARICK, J. (dissenting). Because I believe Supreme Court abused its discretion in allowing the jury to consider identification evidence concerning complainant's prior out-of-court identification of defendant's alleged accomplice, I respectfully dissent.

In the early morning hours of June 10, 2006, complainant was returning to his home in upper Manhattan after an evening socializing with friends. As complainant attempted to enter his apartment, located on East 103rd Street between Lexington and Park Avenues, defendant and another man named Cruz allegedly tackled him from behind on his front door landing. Complainant, who was wearing headphones and listening to music at the time, neither saw nor heard the two men approach him. During the attack, the men allegedly pinned complainant, face up, to the ground. According to the complainant, Cruz rummaged through his pockets, removing $21 and a cell phone, while defendant forcefully held complainant in place. At trial, complainant testified that the incident lasted "less than a minute." Complainant further explained that, after the attack, defendant and Cruz headed west on 103rd Street toward Park Avenue with their backs facing him. He pleaded with defendant and Cruz to return his phone, but the two declined to turn around and engage with complainant. Complainant identified defendant in court during the trial. He had never seen defendant and Cruz before the attack and there were no other eyewitnesses to the robbery.

There were some inconsistencies in the proof adduced at trial. For example, shortly after the incident, complainant called 911. He described the man later identified as Cruz as Hispanic and the man later identified as defendant as black. Complainant told the 911 dispatcher that he believed both men were in their early 20s and that defendant was wearing a white shirt. Complainant could not recall what Cruz was wearing. Although complainant testified at trial that he had no difficultly seeing defendant and Cruz because the area near his apartment was well lit and their unconcealed faces were within an arm's length of complainant's face at the time of the attack, the evidence before the jury nonetheless established that defendant, in fact,

was almost 40 years old and was wearing a dark shirt when the police arrested him later that evening. Furthermore, contrary to complainant's testimony, the arresting officer at trial stated that he was familiar with 103rd Street between Lexington and Park Avenues, which he described as "not well lit" and "fairly dark."

Moreover, according to the arresting officer, both defendant and Cruz were apprehended together on 103rd Street and Park Avenue, after the police had observed them running together. A command log, admitted into evidence at trial, however, indicated that Cruz—who was in possession of complainant's property at the time of the arrest—had been stopped a block away on 104th Street and Park Avenue.

In any event, following their arrest, complainant identified defendant and Cruz in a police-arranged showup identification procedure. In an omnibus motion, defendant moved to suppress complainant's pretrial identification of defendant. After a suppression hearing, Supreme Court granted the motion. Prior to the commencement of defendant's trial, defense counsel moved to exclude complainant's pretrial identification of Cruz as well. Counsel argued that the court should "preclude the Prosecutor from asking about the show-up [identification] of . . . Cruz because [the jury is] going to speculate that [defendant] was there as well." Counsel contended that such speculation would unfairly prejudice defendant. Supreme Court denied the motion.

During the trial, the People elicited extensive evidence pertaining to complainant's pretrial identification of Cruz. Complainant explained that the responding officers told him that he would be asked to make an identification. Shortly thereafter, an unmarked black car arrived in front of complainant's apartment building, which again was described by him as well lit. A man emerged from the back seat of the vehicle who complainant identified as Cruz. Complainant, who estimated that he was standing approximately 20 feet from Cruz, stated that he had no doubt that Cruz was the individual who had rifled through his pockets and stole his belongings.

Following the close of proof, defendant renewed his objection to the admission of Cruz's pretrial identification, albeit for different reasons. This time counsel, citing *People v Monroe* (40 NY2d 1096 [1977]), argued that the evidence should be stricken because "in a severed trial, . . . the [identification] evidence of the co-defendant [who is] not on trial is irrelevant and thus inadmissible." Supreme Court denied the motion.

At summation, the People, in arguing that the proof established beyond a reasonable doubt that defendant was the perpetrator, heavily relied on complainant's pretrial identification of Cruz. The People suggested that complainant's in-court identification of defendant was accurate because "he's one for one . . . Cruz has [complainant's] property on him and [complainant] gets it back that night. So he's one for one."

Counsel again renewed her objection to the admission of complainant's pretrial identification of Cruz after the court submitted the case to the jury. In denying defendant's motion at that juncture, the court reasoned that the evidence was relevant since, "[a]fter all, the complainant's ability to observe and remember were crucial issues in this particular case."

"In New York, the general rule is that all relevant evidence is admissible unless its admission violates some exclusionary rule" (*People v Scarola*, 71 NY2d 769, 777 [1988], citing *People v Alvino*, 71 NY2d 233, 242 [1987]). "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence" (*id.*). It is well settled, however, that "[n]ot all relevant evidence is admissible as of right" (*id.*). "Even where technically relevant evidence is admissible, it may still be excluded by the trial court in the exercise of its discretion if its probative value is substantially outweighed by the danger that it will *unfairly* prejudice the other side or mislead the jury" (*id.* [emphasis added]).

Applying this standard to the circumstances of this case, it is argued that complainant's pretrial identification of Cruz was material or relevant in that it established that the conditions on the landing of complainant's building at the time of the robbery enabled him to observe defendant and accurately identify him at trial (*see* majority mem at 926-927; *see generally People v Wilder*, 93 NY2d 352, 357 [1999]). In a proper case, evidence of a witness's identification of an accomplice not on trial may be admissible, but not here. Here, the probative value of complainant's pretrial identification of Cruz was substantially outweighed by the unfair prejudice the admission of this evidence had on defendant, further compounded by its exploitation during the People's summation.

To begin, this was a one-witness identification case. The perpetrators of the crime attacked complainant from behind in the middle of the night and complainant did not see or hear them approach. According to complainant, the robbery lasted

less than a minute and when the perpetrators fled, complainant could no longer see their faces. Furthermore, complainant described defendant as a black male in his early 20s wearing a white shirt. Defendant was actually close to 40 years old and wearing a dark shirt the night the robbery took place. Moreover, there was conflicting testimony concerning the lighting conditions of the crime scene. The evidence was also inconsistent as to whether Cruz, who was in possession of complainant's cell phone, was arrested alongside defendant or a block apart after the crime took place. Under these circumstances, where the proof introduced at trial is anything but overwhelming, the People's heavy reliance on the accuracy of complainant's pretrial identification of Cruz unduly prejudiced defendant. Since counsel lodged an objection to the admission of this evidence at the close of proof on relevancy grounds, at a time when Supreme Court could correct the error (*see People v Gray*, 86 NY2d 10, 19 [1995]), Supreme Court abused its discretion as a matter of law in failing to strike complainant's testimony on this issue (*see e.g. People v Rosado*, 273 AD2d 325, 326-327 [2d Dept 2000]; *cf. Wilder*, 93 NY2d at 358).

For these reasons, I also disagree with the conclusion reached by the majority at the Appellate Division that any error in the admission of complainant's pretrial identification of Cruz was "harmless" (*People v Thomas*, 68 AD3d 685, 685 [1st Dept 2009]), as the evidence of guilt in this one-witness identification case was clearly not overwhelming.

Accordingly, I would vote to reverse the order of the Appellate Division and grant defendant a new trial.

Judges GRAFFEO, READ, SMITH and PIGOTT concur; Judge CIPARICK dissents and votes to reverse in an opinion in which Chief Judge LIPPMAN and Judge JONES concur.

Order affirmed in a memorandum.