OPINION OF THE COURT
Sheldon S. Levy, J.
Can evidence of a complainant’s failure to identify as the perpetrator of a crime a person other than the defendant be introduced by the People in a criminal case? The answer to this question encompasses an issue not previously dealt with in the reported cases.
Defendant is charged with the forcible rape of a 14-year-old female in a public elevator of a housing complex in upper *246 Manhattan. During the People’s evidentiary presentation before the jury, the complainant — the only eyewitness to the alleged incident — testified that shortly after the attack she reported the event to her father and thereafter to the police. The prosecutor then attempted to elicit proof of a lack of identification on her part of some other person; the defense raised immediate objection; and a side-bar discussion was directed by the court.
At this conference, the People made an offer of proof which first revealed that, within a half hour of the claimed sexual assault, a police officer located a suspect in the area — a person other than the defendant — and brought him before the complaining witness to see if she could identify him as her attacker. The young female stated that this was not the man who had just raped her.
Accordingly, the People proposed that this evidence of a purposeful refusal on the part of the complainant to identify a showup suspect should be admitted, "since it goes to the ability of this witness to observe and to exercise discretion in choosing her assailant.”
In opposition, the defendant asserted that such proof would only serve to bolster improperly evidence of the subsequent lineup ■ identification of the defendant by the complaining witness (see CPL 60.30).
The court thereupon sustained the objection for irrelevancy and as a wrongful bolstering device and now enlarges upon that brief, off-the-cuff determination for the edification of both Bench and Bar.
Initially, it should be made clear that the court’s declination to accept in evidence negative identification testimony of this type is not a criticism, either express or implied, of any police work in this regard (see People v Smith, 63 AD2d 754) or of the investigative device of the reasonably immediate and fair showup, which has been specifically, legally condoned (People v Smith, 38 NY2d 882, 883; People v Logan, 25 NY2d 184, 193-194). Where circumstances fairly suggest or actually require a showup identification procedure, it is often the quickest way of eliminating the innocent or of pinpointing the guilty (see People v Digiosaffatte, 63 AD2d 703, 704; People v Brnja, 70 AD2d 17, 23-26).
Nevertheless, this is not to suggest that, where a defendant is not a part of the identification procedure, evidence of any refusal to identify at a showup — or even in a. constitutionally *247 conducted lineup — should be admissible on the People’s direct case in a criminal prosecution.
A complainant’s lack of selection of one or more persons, other than a defendant, as the perpetrator of any particular crime is completely irrelevant to the question of the guilt or nonguilt of the defendant on trial and to the usual issue of identification. Should a complainant be deemed more reliable because he or she has declined to identify 1, 2, 10, or 100 suspects before identifying the defendant? Can testimony concerning an immediate lineup (or proper showup) identification of a defendant be weakened because some other possible suspects were not first eliminated from consideration?
Obviously, except where it is the defendant that the complainant has failed to identify, the failure to identify other apparently innocent persons has no bearing on the credibility of the complaining witness or on the ability of such witness to perceive, to recall or to recount concerning the subject incident.
Therefore, whether in a prosecution for rape or for any other type of crime where the identification of a defendant is in issue, such proof as is here proposed not only constitutes a prime example of evidentiary irrelevancy, but also serves as an improper means of self-help for a complaining witness and as a wrongful bolstering of identification testimony. (For another type of erroneous bolstering — usually by a third-party witness, see People v Trowbridge, 305 NY 471, and its abundant progeny.) Moreover, this could be especially pernicious when identification is, in effect, the sole question in the case and when the People are relying upon the evidence of a single witness.
The evils inherent in this type of negative testimony become even plainer when it is realized that there can be no proper reliability testing with respect thereto and that a veritable "Pandora’s Box” can be opened for official abuse.
Again, assuming a showup or lineup conducted without the presence of the defendant, the person or persons not identified by the complainant are not usually called as witnesses or available in the courtroom during the trial. Accordingly, there is no way for the trier of fact (whether Judge or jury) to determine the appearance of those persons on the day and at the time of the identification procedure; how closely any such appearance or description matched the defendant’s; or whether there was even any meaningful resemblance or some *248 significant identifying features between them. The person not selected by the complainant, especially in a showup, may have looked or dressed nothing like the described perpetrator, and the inability to identify that person could readily be depicted as "evidence of nothing.”
Nor would photographs — even if they happened to be taken of this nonidentification situation — be admissible, since such evidence would raise all manner of tangential, nonprobative issues. Accordingly, such preferred proof would not be a proper test of credibility, would not be subject to cross-examination, could not be contradicted or contravened and would infringe upon the defendant’s constitutional right of confrontation.
In addition, if this kind of evidence were normally accepted in courtroom proceedings, the temptation on the part of law enforcement officials to "manufacture” such proof would be almost insurmountable. The ease with which any number of "false” suspects could be paraded singly or in groups in front of a complaining witness before a "real” suspect were produced for probable identification should be clearly apparent. If the courts will countenance evidence of a discerning perception and a discriminating choice on the part of a complaining witness by accepting negative proof of nonidentification, then too many will be too happy to accommodate too often. Hopefully, our courts will never provide the impetus or the means for improper police procedures or for the admission of constitutionally violative evidence.
The offer of proof is rejected, and the People’s application is, in all respects, denied.