Gabrielli, J.
(concurring). The majority, by concluding that defense counsel opened the door to admission of negative identification testimony in this case, fails to address the legal question presented. Inasmuch as I believe this issue was properly presented for our review and because I believe that such testimony is relevant and should be received in evidence, I am compelled to concur in the result reached by the majority and to reach the main question of law argued by the parties. A brief review of the facts in this case is necessary to place the negative identification issue in its proper context and focus.
The defendant was convicted, inter alia, of two counts of rape in the first degree arising from two separate incidents. The modus operandi in both instances was similar. In each case, as the victim opened the door to enter her apartment, the defendant emerged from the hallway, forced his way inside, and then raped his victim. Defendant’s fingerprints were discovered in the apartment of Evelyn B., his second victim. His first victim, Anne L., was able to identify defendant at a pretrial lineup and again at trial. In addition, at trial, Detective Arthur Sheehy of the Bronx sex crimes squad testified that before defendant was apprehended, he showed Anne L. a photo array, which did not contain a picture of the defendant, and that Anne L. failed to identify any of the photographed individuals as the perpetrator of the crime. The issue on appeal is whether this negative identification testimony was properly admitted at trial.
It has long been the rule in New York that a witness cannot testify at trial that he overheard an eyewitness make a pretrial identification of the defendant (e.g., People v Trowbridge, 305 NY 471; People v Caserta, 19 NY2d 18; People v Malloy, 22 NY2d 559). Thus, in Trowbridge, we held that a police officer could not testify that he heard the victim of a robbery identify the defendant, then being held at police headquarters, as the person who had committed the crime. In contrast, GPL 60.30 provides that the iden *743 tifying witness himself can take the stand and testify that, prior to trial, he identified the defendant in a lineup or under other circumstances.[1]
The rationale behind the Trowbridge rule is twofold. First, the statement of the third-party witness is hearsay. An out-of-court statement of the declarant, communicated at trial by a third party, is generally hearsay if it is offered for the truth of the fact asserted in the statement (Richardson, Evidence [Prince, 10th ed], § 200). In the Trowbridge situation, the out-of-court declaration of the eyewitness is offered primarily for the truth of the identification statement.
The second reason underpinning the Trowbridge rule is that such third-party testimony improperly bolsters the identification testimony of an eyewitness (e.g., People v Trowbridge, supra; People v Malloy, supra). There is the possibility that mere repetition by a third party that an identification was made will improperly influence the jury’s belief in the reliability of the identification. Furthermore, there is also a danger that the jury will become confused by the testimony and will reason that both the eyewitness and the third-party witness could not be wrong about the identification (see Sobel, Eyewitness Identification, § 30). The testimony of the third party is not probative of whether the defendant was the person who committed the crime, but it could at best establish that the eyewitness, prior to trial, identified the defendant in the presence of others.
Third-party negative identification testimony is fundamentally different from the third-party identification testimony prohibited by Trowbridge and its progeny. First, negative identification testimony is not hearsay. Such testimony by a third-party witness is not offered in evidence for the truth of the statement made by the declarant eyewitness. Rather, it is offered only to prove that the eyewitness possesses the ability to distinguish the particular features of the perpetrator of the crime. In this case, the statement of Detective Sheehy that Anne L. failed to identify her assailant from a group of photographs, none of *744 which showed the defendant, is not hearsay because it was offered in evidence solely to demonstrate the victim’s powers of perception, memory and reasoning.
In addition, negative identification testimony does not bolster the identification made by the eyewitness. Rather, it merely vouches for the credibility of the eyewitness. Negative identification testimony does not involve the continued repetition of evidence that an identification was made, and there is virtually no danger that it will lead the jury mistakenly to believe that someone other than the eyewitness himself positively identified the defendant as the perpetrator. On the contrary, this testimony is likely only to assist the jury in evaluating the credibility of the eyewitness.
That third-party identification testimony and third-party negative identification testimony are fundamentally different does not end our inquiry. For any evidence to be admissible, it must also be relevant to the issues presented at trial (1 Wigmore, Evidence [3d ed], § 9; Proposed Code of New York Evidence, § 401).
As a general proposition, negative identification evidence will be relevant in certain circumstances. When the reliability of an eyewitness identification is at issue, negative identification evidence can tend to prove that the eyewitness possessed the ability to distinguish the particular features of the perpetrator. Furthermore, it may also be useful in demonstrating that the eyewitness was unwilling simply to select anyone offered to him by the police. The common lineup, a fundamental part of the criminal identification process, unquestionably involves a form of negative identification evidence inasmuch as the selection by the eyewitness is evaluated in conjunction with his failure to identify the other participants in the lineup.
For these reasons, I do' not believe that a wholesale rejection of this form of evidence is either required or desirable. Instead, the admissibility of negative identification evidence must be evaluated in each individual case in terms of its relevance to the identification issue and with a view toward other pertinent considerations.
In each case, the relevance of negative identification testimony will depend largely on the extent to which there *745 is some similarity between the features of the individuals the eyewitness declined to identify and the features of the defendant. If the appearance of the defendant is dissimilar to the appearance of the others, the negative identification testimony is of limited probative value and should be rejected.
Ordinarily, when evidence of a negative photo identification is sought to be introduced, the People should provide the court with the photographs that the eyewitness viewed and rejected.[2] When it is not possible to produce these photographs, or where the negative identification was made of live suspects, the probative value of the negative identification testimony should be ascertainable through the testimony of witnesses. If the probative value of the evidence cannot otherwise be established, it should be deemed inadmissible.
It has also been suggested that one of the dangers inherent in the acceptance of negative identification testimony is that this form of evidence is susceptible of being manufactured for trial (see People v Moss, 103 Misc 2d 245, 248). Of course, our courts should not countenance such behavior, and in the event that it appears that a negative identification was motivated by anything other than the sincere efforts of the police to facilitate the identification of the perpetrator of the crime, testimony concerning that negative identification should be rejected.
Turning to the facts of the present case, it is evident that the trial court did not err in admitting the third-party negative identification testimony given by Detective Sheehy. The ability of Anne L. to identify her assailant was clearly in issue. Although Detective Sheehy was unable to produce the photographs viewed by this eyewit *746 ness,[3] he was able to give substantial testimony on cross-examination concerning the similarity of the individuals in the selected photographs to the description given by the eyewitness of the perpetrator. Detective Sheehy testified that all of the photographed individuals were male blacks having short afro haircuts and no beards. Defense counsel might have been able to draw out further evidence of similarity, or possibly established dissimilarity, but the record reveals that at this juncture he chose not to continue this line of inquiry. It cannot be said on the basis of this record that the negative identification testimony given by Detective Sheehy should have been excluded as irrelevant.
In addition, there is no basis in the record for concluding that the photographs were shown to the eyewitness to “shore-up” her identification testimony at trial. Such being the case, there appears to have been no impediment to the admission of this testimony in evidence.
For all of the foregoing reasons, I would affirm.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchsberg and Meyer concur in memorandum; Judge Gabrielli concurs in a concurring opinion in which Judge Jasen concurs.
Order affirmed.

. The eyewitness may not testify, however, to making a pretrial photographic identification of the defendant (e.g., People v Cioffi, 1 NY2d 70).

. The fact that an eyewitness cannot testify that he made a pretrial photographic identification of the defendant is irrelevant in this instance (see, e.g., People v Caserta, 19 NY2d 18; People v Cioffi, 1 NY2d 70). A primary concern in the use of such testimony is that the identification of the defendant from among a group of mug shots will indicate to the jury that the defendant has a prior criminal record. In' the present case, in contrast, Detective Sheehy merely testified that the defendant was not identified from a group of mug shots.

. Detective Sheehy apparently pulled mug shots from police files which showed individuals having characteristics similar to those described by Anne L: When she failed to identify her assailant from among these photographs, Detective Sheehy returned them to the files without keeping a record of which photographs had been viewed.