THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHANIEL BETHUNE, Appellant.

Second Department, December 31, 1984

## APPEARANCES OF COUNSEL

*William E. Hellerstein* (*Mark C. Cogan* of counsel), for appellant.

*Elizabeth Holtzman, District Attorney* (*Barbara D. Underwood, Roseann B. Mackechnie* and *Karen M. Wigle* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

■ At defendant's trial for rape and related offenses, in which the issue of identity was hotly contested, the victim identified defendant as her assailant, and also testified that she had bitten his arm during the course of the attack. Expert testimony was then adduced to the effect that defendant did, in fact, have the

scar of a human bite mark on his arm. While the expert was unable to state, with a reasonable degree of scientific certainty, that the bite in question had been inflicted by the victim, he was allowed to testify that the scarring pattern on defendant's arm was consistent with the victim's dentition. On this appeal, we are called upon to determine whether, under these circumstances, the evidence pertaining to the bite mark was properly admitted. We affirm.

The trial which resulted in the judgment of conviction now under review was conducted in April, 1981.[1] The pertinent trial evidence, which we must view in the light most favorable to the People (*People v Kennedy*, 47 NY2d 196, 203; *People v Tucker*, 102 AD2d 535, 536), established that on the afternoon of August 28, 1978, the victim returned from a shopping trip to the apartment of her boyfriend, who was then at work. Upon entering the bedroom, she encountered a black male, approximately 5 feet 7 or 8 inches in height, and weighing 150 to 160 pounds, with a medium-length Afro haircut, long sideburns and no other facial hair. The man had needlemarks on his arm and was missing several teeth. The victim attempted to flee the apartment, but the man seized her and prevented her escape. During the ensuing struggle, while her assailant had his right arm around her neck, she bit him on that arm, between his elbow and wrist. The man then went into the bathroom, where he remained for approximately two minutes, during which time the victim heard the water running. He then returned, and, after assaulting and raping the victim, stole money and various items of property from within the apartment, and left. The entire incident lasted in excess of one hour. The police were promptly notified, and the victim was taken to the hospital for treatment of her injuries.

On the afternoon of March 20, 1979, approximately seven months later, the victim encountered a man near the mailboxes of the building in which her boyfriend's apartment was located.

1. At defendant's first trial the victim testified that she had bitten defendant on his arm during the incident. However, a mistrial was declared when the jury was unable to agree upon a verdict. On February 11, 1981, after jury selection for a second trial, the prosecutor moved for an order permitting a forensic odontologist to examine defendant's arm for a bite mark scar. The motion was granted and the examination conducted. The forensic odontologist, Dr. Lowell Levine, reported that there was a bite mark scar on defendant's right arm between his wrist and elbow, the age of which could not be determined with any degree of certainty. The court then granted defense counsel's application for a mistrial to enable him to review Dr. Levine's report with an expert of his choosing.

Although this man had a full beard, she nevertheless believed him to be her assailant. However, because she was unable to see if this man was missing any teeth, she did not call the police.

On March 25, 1979, five days later, the victim encountered the same man at a social club, who at this time had no beard, but who did have a light mustache and heavy sideburns, and was missing some teeth. After approaching the man and asking him if he knew her, and recognizing that this was the man who had raped her, the victim contacted the police; defendant was subsequently arrested and charged. The victim identified defendant in court as her assailant.

In addition, the prosecution called Dr. Lowell Levine, who was qualified as an expert in the field of forensic odontology.[2] Dr. Levine testified that on January 8, 1981, he had examined defendant's mouth and found, *inter alia,* that defendant had several missing teeth. In particular, defendant had lost an upper left central incisor tooth, resulting in an unusually large diastema, or space, between the remaining upper front teeth. Dr. Levine noted that the missing teeth had been replaced with a removable or partial denture.[3]

Dr. Levine further testified that on February 11, 1981, almost 2½ years after the alleged crime, he had conducted an examination of defendant's right arm. He observed a scar on the outer portion of the arm, between defendant's elbow and wrist, and caused a series of life-sized photographs of the scar to be taken. Dr. Levine also obtained a set of models or study casts of the victim's teeth, with which he made aluwax impressions of her bite marks. He then conducted a comparison of the aluwax imprints with the scar depicted in the life-sized photographs of defendant's arm.

Dr. Levine explained to the jury that every person's set of teeth are unique by reason, *inter alia,* of the arrangement of the teeth, their shapes and positions, the existence of wear patterns or breakage, and the presence of dental work such as fillings or

---

2. Dr. Levine has been described as "a forensic odontologist of the widest experience as an expert witness, author, and lecturer in legal and academic circles. He has been consultant to the New York City Medical Examiner, the Kennedy assassination committee, among others, and holds dental school faculty rank, and editorial board positions in several recognized odontological journals * * * [He] has been cited extensively in both the decisional law and the odontological literature for his numerous writings and appearances" (*People v Smith,* 110 Misc 2d 118, 120).

3. Defendant's dental records, which were received in evidence, established that the denture had been inserted on November 29, 1979, approximately 15 months after the alleged crime.

caps. With respect to the victim's teeth, Dr. Levine noted that she had a diastema, or space, between two wide upper central incisor teeth; she had two upper lateral incisor teeth which exhibited wear patterns; she was missing her upper canine teeth, and her first premolars occupied the space in which the upper canines would normally have been found; her lower teeth were very crowded; and she had only three lower central incisor teeth instead of the normal four in number.

Based upon the examination of defendant's arm, Dr. Levine formed an opinion that the scar thereon was a healed human bite mark. Specifically, Dr. Levine stated, with a reasonable degree of medical or dental certainty, that the bite mark on defendant's arm had been produced by six upper and three lower teeth. Dr. Levine further stated that the characteristics of the victim's dentition were consistent with the scar pattern on defendant's arm. However, he was unable to state, with the same degree of certainty, that the bite on defendant's arm had in fact been inflicted by the victim.

The only testimony offered by the defendant as to the bite mark issue was that of Dr. Arthur Goldman, an expert in forensic odontology. In March and April, 1981, Dr. Goldman had examined defendant's arm, along with the photographs thereof taken under the direction of Dr. Levine. He also examined the study casts of the victim's teeth, from which he prepared his own wax imprints. Dr. Goldman testified that he was reasonably sure that the marks on defendant's arm constituted a "very, very old" human bite mark, although he was unable to determine its age with any greater specificity. Dr. Goldman was also unable to perceive sufficient detail to relate or orient the marks to the victim's dentition, which he found to be quite distinctive. Dr. Goldman conceded that Dr. Levine had greater expertise in the field of bite mark identification than he did.

On appeal from the ensuing judgment of conviction, defendant contends that the trial court erred in admitting any evidence as to the presence of a bite mark scar on his arm as a means of identifying him as the person who committed these crimes. He maintains that the prejudicial impact of such evidence was great, and that its probative value was minimal, because: (1) 2½ year-old bite marks, such as that in the case at bar, have simply not been accepted or recognized in the field of forensic odontology as providing a scientifically reliable basis for identification; (2) the People's expert testified only that the scar on defendant's arm was merely consistent with the victim's dentition; and (3)

defendant established, in cross-examination of the People's expert, that the particular scar on his arm could not have resulted from a bite inflicted in the manner described by the victim.

We reject these contentions and conclude that evidence of the presence of a human bite mark on defendant's arm was relevant evidence which tended to prove that he was the assailant. Relevant evidence is defined as " 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' " (*People v Davis,* 43 NY2d 17, 27, cert den 435 US 998, citing Uniform Rules of Evidence, rule 401 [1974]; see, also, *People v Johnson,* 47 NY2d 785, 787, cert den 444 US 857; Richardson, Evidence [Prince, 10th ed], § 4). Logically, once the victim testified that she had inflicted a bite on her attacker's right arm between his elbow and wrist, evidence of the existence of a scar on that very location on defendant's right arm, which was identified by both the prosecution and defense experts as a healed human bite mark, rendered it more probable that defendant was, in fact, the person bitten by the victim. This, in turn, was circumstantial evidence which, in conjunction with the victim's identification of defendant and her description of his physical characteristics, properly permitted the trier of fact to infer the ultimate fact in issue, i.e., that defendant was the assailant.

In this State, it is recognized that bite mark evidence, i.e., the comparison of impressions made upon a person's body with the dentition of another, has gained general acceptance in the scientific community as a reliable means of identification, and such evidence is therefore admissible in a criminal case (*People v Middleton,* 54 NY2d 42, 45, 49-50; see, also, *People v Smith,* 63 NY2d 41, 63). So long as an expert has utilized techniques and procedures that have been approved by a majority of the experts in the field in arriving at his opinion, that opinion is admissible in evidence without the necessity of a separate judicial determination regarding the validity or acceptance of the operative scientific principles (*People v Middleton, supra,* pp 49-50). In *Middleton,* the court noted that the reliability of such techniques as photography, freezing of tissue specimens, the taking of dental molds and visual observation had been generally accepted by the majority of experts in the field as means of identifying bite marks and, in addition, such techniques had been accepted by all of the appellate courts having had occasion to address the issue (*People v Middleton, supra,* pp 49-50). The specific procedure sustained in *Middleton* involved a comparison of casts of defendant's teeth with a frozen specimen of the

deceased victim's skin bearing a bite mark, from which Dr. Levine (the same expert utilized by the prosecution in the case at bar) concluded that the bite had been inflicted by defendant (*People v Middleton, supra,* pp 50-51).

In *People v Smith* (*supra*), the forensic odontologists called by the People (including Dr. Levine and Dr. Goldman, the experts in the present case) employed two techniques, both of which were found by the court to have received the requisite degree of scientific acceptance. First, they compared a stone model of defendant's teeth, and aluwax impressions made therefrom, with a life-sized photograph of that portion of the deceased victim's breast bearing the bite mark in question. Second, the experts compared the foregoing photograph, taken in 1981, with a photograph taken in 1977, some four years earlier, depicting a bite mark known to have been inflicted by defendant upon the nose of a different victim (*People v Smith,* 63 NY2d 41, 57-58, 62-64, *supra*).

In the within case, both Dr. Levine and Dr. Goldman employed a procedure that was utilized by the experts in *Middleton* and *Smith* (*supra*), the reliability of which was found in both cases to have been generally accepted in the scientific community. Specifically, both experts engaged in a comparison of a set of models or study casts made from the victim's teeth, and aluwax impressions made therefrom, with life-size photographs of the bite mark scar on defendant's arm. In fact, it appears that the only factor distinguishing the procedure employed in the case at bar from those utilized in *Middleton* and *Smith* was that the bite mark in this case was not of recent origin. However, there is no testimony to suggest that the age of the bite mark impaired the validity or reliability of the identification technique utilized. Although both experts characterized the scar on defendant's arm as being old, and neither was able to form an opinion as to its precise age, both agreed that the scar was, in fact, a healed human bite mark. Thus, defendant cannot now claim that evidence regarding the aged bite mark was improperly admitted. The test for admissibility, as established in *Middleton,* is whether the techniques and procedures utilized by the expert in arriving at his opinion are viewed by a majority of experts in the field as accurate and reliable (*People v Middleton, supra,* pp 49-50). As noted, the specific techniques employed by both experts herein were also used in *Middleton* and *Smith* and were found therein to have met the foregoing criteria for admissibility. Moreover, defendant's own expert made no claim, and there is nothing in the record to suggest, that a majority of forensic odontologists view identification of aged bite mark scars

as inaccurate or unreliable. Therefore, under these circumstances, we conclude that evidence regarding the bite mark in question was not rendered inadmissible by reason of the age of the scar.

■ Furthermore, we reject defendant's claim that the trial court unduly restricted his re-cross-examination of Dr. Levine regarding the witness' ability to identify and evaluate a bite mark of considerable age. We are cognizant that cross-examination is an essential component of the constitutional right of an accused in a criminal case to confront the witness against him (*Davis v Alaska,* 415 US 308, 315-316; *People v Bryant,* 77 AD2d 603). Moreover, we have held that, in a criminal case, a party may prove through cross-examination any relevant proposition, irrespective of the scope of direct examination (*People v Kennedy,* 70 AD2d 181, 186). However, once the parties have proceeded to redirect and re-cross-examination, inquiry as of right is limited to new matters brought out on the preceding examination, and the scope of examination otherwise rests within the sound discretion of the trial court (see, e.g., *People v Melendez,* 55 NY2d 445, 451; Fisch, NY Evidence [2d ed], § 344). In the present case, we cannot say that the trial court abused its discretion by limiting defense counsel's re-cross-examination of Dr. Levine.

Counsel was not restricted in his cross-examination, and yet he chose, presumably for strategic reasons, to limit himself to conducting a demonstration aimed at establishing that the victim could not have bitten defendant while his arm was around her neck. On redirect examination, the prosecutor sought only to defuse the impact of that demonstration by establishing that Dr. Levine's opinions regarding the origin of the scar on defendant's arm and its consistency with the victim's dentition had not changed as a result of the demonstration. Thus, defense counsel's attempt on re-cross-examination to question Dr. Levine regarding his experience in examining and evaluating bite marks exceeding two years of age constituted a foray into an entirely new area, and it was not error to preclude him from doing so. The defense had a full opportunity to cross-examine the witness regarding the basis of his opinions and to discredit him through the use of pertinent texts of recognized authority. Moreover, the defense could have adduced through its own expert, Dr. Goldman, evidence supporting its claim that aged bite mark scars are not recognized as an accurate and reliable basis for identification (see *People v Cronin,* 60 NY2d 430, 432). Having failed to pursue any of these methods, defen-

dant should not now be heard to complain that his right to cross-examination was impaired or curtailed.

In addition, the experts called by each side agreed that the victim's dentition had certain distinctive characteristics, and the prosecution's expert concluded that the scar on defendant's arm, consisting of marks inflicted by six upper and three lower human teeth, was entirely consistent with the victim's dentition. Under these circumstances, evidence of such consistency was relevant, in that it tended to further enhance the probative value of the evidence of the bite mark scar on defendant's right arm, notwithstanding the witness' inability to state, with a reasonable degree of medical or dental certainty, that the bite had been inflicted by the victim.

■ We do not agree with defendant's contention that the witness' inability to positively attribute the scar to the victim's bite precluded admission of any evidence with respect thereto. Defendant relies on *People v Macedonio* (42 NY2d 944), wherein the Court of Appeals held that evidence that defendant had type "A" blood, and that semen found within the victim was also derived from a man with type "A" blood, was of no probative value in view of the large percentage of the general population (40%) having blood of that type (see, also, *People v Robinson*, 27 NY2d 864; but see *Matter of Abe A.*, 56 NY2d 288, 299, n 4). However, we perceive no such infirmity with respect to the bite mark evidence in the case at bar. The record does not support defendant's claim that Dr. Levine's testimony failed to exclude the possibility that a significant proportion of the general population might also have inflicted the bite in question. Both Drs. Levine and Goldman agreed that the victim's bite mark was very distinctive. Moreover, Dr. Levine's comparison of the victim's dentition to the scar on defendant's arm was performed with a view toward finding any distinguishing characteristics or inconsistencies which would have excluded the possibility that the bite had been inflicted by the victim. Finding no such inconsistency, he concluded that the victim's distinctive dentition was consistent with the scarring on defendant's arm. While there is little question that the testimony with respect to the scar involved to a large degree circumstantial evidence, such evidence need not point to guilt with certainty in order to warrant its admission (*People v MacDonald*, 61 AD2d 1081), and while each piece of circumstantial evidence may not be sufficient in itself to establish identity, the cumulative probative value of all such evidence may be sufficient (*People v Brooks*, 92 AD2d 1035, 1036). In view of the victim's testimony that she had bitten this defendant on his right arm, the testimony of both

experts that the scar on this defendant's right arm was a healed human bite mark, and their further testimony that the victim's dentition was distinctive, Dr. Levine's testimony that the two were consistent was probative and, therefore, properly received in evidence (see, also, *People v Ahearn,* 88 AD2d 691, 692).

We further conclude that the trial court did not impermissibly allow Dr. Levine to offer an opinion lacking the requisite degree of certainty for admission into evidence. It is, of course, well settled that expert opinions which are " 'contingent, speculative, or merely possible' " lack probative force and are, therefore, inadmissible (*Matott v Ward,* 48 NY2d 455, 461, citing *Strohm v New York, Lake Erie & Western R. R. Co.,* 96 NY 305, 306; see, also, *People v Roff,* 67 AD2d 805, 806; *People v Harding,* 59 AD2d 897, 898). However, it is also clear that an expert witness is not limited to giving conclusive results (*People v Allweiss,* 48 NY2d 40, 50). The appropriate inquiry in determining whether to admit an expert's opinion into evidence is whether he demonstrates "a degree of confidence in his conclusions sufficient to satisfy accepted standards of reliability" (*Matott v Ward, supra,* p 459). It must be " 'reasonably apparent' " that the expert witness " 'intends to signify a probability supported by some rational basis' " (*Matott v Ward, supra,* p 461, citing *Matter of Miller v National Cabinet Co.,* 8 NY2d 277, 282). Although this standard may appropriately be expressed as " 'a reasonable degree of * * * certainty' ", reliance upon such language is not essential, so long as it can be said that the expert witness' opinion reflects an acceptable degree of certainty (*Matott v Ward, supra,* p 460).

In this case, Dr. Levine did opine with a reasonable degree of medical or dental certainty that the scar on defendant's right arm was a healed human bite mark which had been produced by six upper and three lower teeth. However, the witness did not at any time offer an opinion that the bite in question had been inflicted by the victim. In fact, in response to a question posed by defense counsel on re-cross-examination, Dr. Levine testified that he was unable to arrive at that conclusion with a reasonable degree of certainty. Therefore, we perceive no impropriety in the admission of that portion of Dr. Levine's testimony.

The witness also opined that the characteristics of the victim's dentition were consistent with the scar pattern on defendant's arm. In this instance, the witness was not asked, nor did he state, that his opinion was supported by a reasonable degree of certainty. However, we do not view this omission to be fatal. The record reflects that Dr. Levine described and demonstrated to

the jury in detail the procedure he employed in comparing the victim's dentition to the scar on defendant's arm. Thus, it was readily apparent that his opinion regarding their consistency was not based on mere speculation or conjecture. Rather, Dr. Levine clearly intended " 'to signify a probability supported by some rational basis' " (*Matott v Ward, supra,* p 461, citing *Matter of Miller v National Cabinet Co., supra,* p 282), and his opinion therefore reflected an acceptable level of certainty (*Matott v Ward, supra,* pp 459-460; see, also, *People v McNeeley,* 77 AD2d 205, 210).

■ Defendant also contends that the probative value of the bite mark evidence was nullified, thereby requiring its exclusion, because it was established during the cross-examination of Dr. Levine that the particular scar on defendant's arm could not have resulted from a bite inflicted in the manner described by the victim. We disagree. The record reflects that during cross-examination, defense counsel placed his right arm around his client's neck and inquired of Dr. Levine whether it would have been possible for the victim to have inflicted the bite mark in issue on defendant's arm while it was in that position. Dr. Levine responded that he could not see how the bite mark in question could have been inflicted "with the arm around the neck like that". However, the record is bereft of any testimony or other evidence regarding the precise position of the arm or of the victim's head at the time of the alleged bite. Although she testified that she had bitten defendant on his right arm, between his elbow and wrist, while the arm was around her neck, she was never asked to describe or demonstrate precisely how this act was accomplished. Therefore, there was an inadequate foundation for the demonstrative procedure attempted by defense counsel; there simply was no showing that the placement of his arm around defendant's neck approximated the manner in which defendant had allegedly held the victim, and the demonstration was therefore misleading and lacking in probative value (see *People v Sugrue,* 103 AD2d 785).

BROWN, NIEHOFF and BOYERS, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered May 14, 1981, affirmed.