OPINION OF THE COURT
Alan D. Marrus, J.
Immediately following a gunpoint robbery by two men who surrounded him in the vicinity of three others on a Brooklyn street, the complainant went to a nearby police precinct to report the crime, and after driving around with the police for about 10 minutes, the complainant spotted a group of 5 or 6 men, 2 of whom he identified as the perpetrators of the crime. One of these two is the defendant. The complainant told the *172 police he could not identify the others in the group because, at the time of the crime, the other males in the vicinity were too far away for him to be able to make a positive identification.
The court has conducted a Wade hearing and determined that the complainant’s identification of the defendant and the other male was not the product of a police-arranged identification procedure and that, even if it were, there was nothing unduly suggestive about it. Thus, the identification testimony will be admissible at trial.
The defendant makes the additional argument that the court not permit the complainant to testify that there were several other males present at the time of the showup whom he did not identify. This evidence of a "negative identification,” he argues, constitutes improper bolstering of the identification.
In support of his argument, he relies upon People v Moss (103 Misc 2d 245 [Sup Ct, NY County 1980]), where the court held that evidence of a complainant’s failure to identify as the perpetrator of a crime a person other than the defendant should not be admissible at trial. In Moss, a 14-year-old female reported that she had been raped in a public elevator. Within a half hour of the report, the police brought a suspect, who was not the defendant, to the complainant, and she stated he was not the man who had raped her. The court there ruled that such "negative identification” evidence should not be admitted on the People’s direct case because "[a] complainant’s lack of selection of one or more persons, other than a defendant, as the perpetrator of any particular crime is completely irrelevant to the question of the guilt or nonguilt of the defendant on trial and to the usual issue of identification” (People v Moss, supra, at 247).
This court cannot agree with the reasoning of the Moss decision (supra) that "negative identification” evidence is completely irrelevant and should always be excluded. In this case, the fact that the complainant did not identify 3 or 4 other males at the same time and place he identified the defendant and a companion is relevant evidence which should be admissible at trial.
The general rule for any evidence to be considered relevant is that it have a " ' "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” ’ ” (People v Bethune, 105 AD2d 262, 267 [2d Dept *173 1984], quoting People v Davis, 43 NY2d 17, 27, cert denied 435 US 998, citing Uniform Rules of Evidence, rule 401 [1974].) At the same time "[e]vidence, while technically relevant, may be excludable if it is too slight, remote, or conjectural to have any legitimate influence in determining the fact in issue.” (People v O’Connor, 154 AD2d 626, 627 [2d Dept 1989]; see, Richardson, Evidence § 147 [Prince 10th ed 1973].)
In any case where the identification of the defendant is the central issue, a jury must be instructed on the importance of carefully scrutinizing the identification testimony. (People v Daniels, 88 AD2d 392 [2d Dept 1982].) Jurors are to be instructed that, among other things, they must evaluate the eyewitness’ "general intelligence,” "capacity for observation, reasoning and memory,” and determine whether the eyewitness has the "capacity to remember” the assailant. (People v Daniels, supra, at 402, n.) In some cases, "negative identification” evidence may be relevant to the jury’s determination of these questions.
In People v Bolden (58 NY2d 741 [1982]), the New York Court of Appeals was presented with, but did not reach, the question of the admissibility of negative identification evidence. Two Judges in a concurring opinion, nevertheless, did address the issue, and this court finds their reasoning more persuasive than that to be found in the lower court decision in Moss (supra).
In Bolden (supra), a rape case, a police witness was permitted to testify that he showed one of the complainants a photo array, which did not contain a photograph of the defendant, and that the complainant did not identify any of the photographs. The Court of Appeals decided that it was not necessary to reach the merits of the issue of the admissibility of this negative identification evidence because the defense opened the door to it by failing to object to an unresponsive answer necessitating an explanation.
Two Judges, in a concurring opinion, did address the merits and concluded that "[a]s a general proposition, negative identification evidence will be relevant in certain circumstances.” (People v Bolden, supra, at 744 [concurring opn, Gabrielli, J.].) As noted in that opinion, negative identification evidence can tend to show that an eyewitness is able to distinguish the • particular features of the perpetrator and that the eyewitness is unwilling to select just anyone presented by the police. Indeed, evidence of a lineup identification involves a form of *174 negative identification in that there is an evaluation of the participants in the lineup who were not identified.
Negative identification evidence could conceivably be quite compelling. If, for example, an eyewitness to a crime is shown a "blank lineup,” a lineup not containing the defendant but where all of the participants closely resemble the defendant, and the eyewitness makes no identification, a subsequent identification of the defendant in another lineup would surely be viewed as extraordinarily strong evidence. Conversely, a negative identification at a one-person showup, where the suspect does not come close to resembling the perpetrator described by the eyewitness, would have no probative value.
In People v Huertas (75 NY2d 487 [1990]), the Court of Appeals held that evidence of a complaining witness’s account of a description of her assailant to the police shortly after she was raped was properly admitted at trial. In reaching this determination, the court emphasized that this is "evidence that assists the jury in evaluating the witness’s opportunity to observe at the time of the crime, and the reliability of her memory at the time of the corporeal identification — both important aspects of the critical issue.” (People v Huertas, supra, at 493.) Negative identification evidence may in certain cases provide similar assistance to a jury charged with the responsibility of resolving a hotly contested issue of identification.
In the case before this court, the critical issue is one of identification. The jury should be able to see the full picture of the identification evidence, not one that is judicially edited to redact the negative identification. There is a significant difference between the jury hearing that the defendant and one other were pointed out to the police in the street by the complainant moments after the crime and the jury hearing that these males were identified out of a group of 5 or 6 males in the street. Both the prosecution and the defense will be permitted to elicit the details of the description of these other males not identified by the complainant.
This is not a case where the eyewitness will be asked about prior unrelated negative identifications. (See, People v Shaw, 150 AD2d 626 [2d Dept 1989] [error for trial court to permit an undercover officer in a narcotics prosecution to testify that on 4 or 5 unrelated occasions he had stated the person arrested was not the one who sold the drugs].) Rather, this is a case where the negative identification evidence is directly *175 related to and bears directly upon the credibility of the affirmative identification evidence. The defendant’s motion to preclude the evidence at trial is, therefore, denied.